UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

CNY FAIR HOUSING, INC.; THE FAIR HOUSING
PARTNERSHIP OF GREATER PITTSBURGH, INC.;
HOUSING RESEARCH & ADVOCACY CENTER, INC.,
d/b/a FAIR HOUSING CENTER FOR RIGHTS &
RESEARCH, INC.; HOUSING OPPORTUNITIES MADE
EQUAL OF BUFFALO, INC.; HOUSING
OPPORTUNITIES MADE EQUAL OF GREATER
CINCINNATI, INC.; PHYLLIS BARTOSZEWSKI;
DEANNA TOWN; and JOYCE WILCOX, as administrator
and representative of the estate of Lois Harter,

5:21-cv-361 (BKS/ML)

                              Plaintiffs,

v.

WELLCLOVER HOLDINGS LLC; CLOVER
MANAGEMENT, INC.; CLOVER COMMUNITIES
CAMILLUS LLC; CLOVER COMMUNITIES SALINA
LLC; CLOVER COMMUNITIES NEW HARTFORD,
LLC; CLOVER COMMUNITIES CLAY LLC; CLOVER
COMMUNITIES JOHNSON CITY, LLC; CLOVER
COMMUNITIES SOUTHWESTERN LLC; CLOVER
COMMUNITIES SWEETHOME, LLC; and
LACKAWANNA SENIOR HOUSING LP,[1]

                              Defendants.
_____

**Appearances:**

*For Plaintiffs:*

Conor J. Kirchner
Matthew Casey Weissman-Vermeulen
CNY Fair Housing, Inc.

---

[1] Eleven other defendants who were originally named in the Complaint have since been dismissed. Plaintiffs voluntarily dismissed one entity—Clover Group New York LLC—before Defendants filed their motion to dismiss, and voluntarily dismissed nine other entities—Clover Group, Inc.; Clover Communities Olmsted Falls LLC; Clover Communities Lorain LLC; Clover Communities Hamilton LLC; Clover Communities Bethel Park LLC; Clover Communities North Fayette LLC; Clover Communities Scranton, LLC; Clover Communities Harborcreek, L.P.; and Clover Communities Taylor LLC—after Defendants filed their motion to dismiss. (*See* Dkt. Nos. 17, 31). One more entity—Welltower, Inc.—was later dismissed in accordance with the Court's February 28, 2022 Decision. *CNY Fair Hous., Inc. v. Welltower Inc.*, 588 F. Supp. 3d 282, 300 (N.D.N.Y. 2022).

731 James St., Ste. 200
Syracuse, NY 13203

Soohyun Choi
Reed N. Colfax
Gabriel Diaz
Sara K. Pratt
Relman, Colfax PLLC
1225 19th St., N.W., Ste. 600
Washington, DC 20036

*For Defendants:*

Gregory P. Photiadis
Elizabeth A. Kraengel
Elise L. Cassar
Duke, Holzman, Photiadis & Gresens LLP
701 Seneca St., Ste. 750
Buffalo, NY 14210

**Hon. Brenda K. Sannes, Chief United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I.   INTRODUCTION

Plaintiffs CNY Fair Housing, Inc.; The Fair Housing Partnership of Greater Pittsburgh, Inc.; Housing Research & Advocacy Center, Inc., d/b/a Fair Housing Center for Rights & Research, Inc.; Housing Opportunities Made Equal of Buffalo, Inc.; Housing Opportunities Made Equal of Greater Cincinnati, Inc. (the "Organizational Plaintiffs"); Phyllis Bartoszewski; Deanna Town; and Joyce Wilcox, as administrator and representative of the estate of Lois Harter (the "Individual Plaintiffs"), bring this action, asserting claims under the Fair Housing Act of 1968 ("FHA"), New York Human Rights Law, and Ohio Civil Rights Law. (Dkt. No. 1). Presently before the Court is Defendants' motion to strike the reports and exclude the opinions of Plaintiffs' experts, Erin Kemple and Christina Brooks. (Dkt. No. 89). Defendants' motion is fully briefed, (Dkt. Nos. 89, 101, 104, 122), and the Court assumes familiarity with the factual history

of this case as set out in the Court's February 28, 2022 Decision, *CNY Fair Hous., Inc.*, 588 F. Supp. 3d at 286–90. Also before the Court are three motions to seal filed by the parties in connection with their motions for summary judgment. (Dkt. Nos. 160, 174, 182). For the following reasons, all four motions are denied without prejudice to renewal.

## II.   DISCUSSION

### A.   Motion to Strike

Defendants move to strike the reports and exclude the opinions of Plaintiffs' experts, Ms. Kemple and Ms. Brooks. (Dkt. No. 89). Both experts have submitted reports dated January 31, 2023, (Dkt. Nos. 89-2, 89-3), and supplemental reports dated June 16, 2023, (Dkt. Nos. 122-1, 122-2). In support of their motion, Defendants rely on Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and caselaw precluding experts from testifying to legal conclusions. Defendants claim that the reports "are comprised of nothing but conclusory statements that are not based on any relevant data or facts" and "do nothing to aide a trier of fact to understand any evidence or determine a fact in issue." (Dkt. No. 89-4, at 6). Plaintiffs, on the other hand, argue that the motion to strike is premature because, as of their April 2023 opposition to the motion, discovery was still open and the experts had not been deposed. (Dkt. No. 101, at 8–11, 23; *see* Dkt. No. 130 (Text Order directing that fact discovery be completed by October 9, 2023, and that expert depositions be completed by October 27, 2023)). Plaintiffs also counter that the Organizational Plaintiffs "are entitled to damages for their investigation and counteraction efforts as well as any frustration of their missions occasioned by Defendants' discriminatory actions" and that Ms. Kemple's report "addresses the actions the organizations took in response to Defendants' discriminatory policies and how those actions fit into the standard fair housing organization processes and practices to address such discrimination" and Ms. Brooks' report "discusses typical and accepted reasonable accommodations policies and

procedures at multi-family apartment buildings and how Defendants' procedures relate to those standards." (Dkt. No. 101, at 3).

The Court agrees that the motion is, at this time, premature. In addition to the fact that expert discovery was not completed at the time these issues were briefed, having reviewed the pending motions for summary judgment, it does not appear that the Court needs to resolve the admissibility of the expert opinions before resolving the motions for summary judgment. And until the Court rules on those motions, it is not clear which, if any, theories of liability will survive summary judgment. *See Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 188 (1st Cir. 1997) ("Because the summary judgment process does not conform well to the discipline that *Daubert* imposes, the *Daubert* regime should be employed only with great care and circumspection at the summary judgment stage."). The Court also notes that the parties have not adequately briefed the relevance and admissibility of some of the proposed expert testimony. With respect to the admissibility of Ms. Kemple's testimony regarding the calculation of organizational damages, neither party has provided any caselaw regarding the type of damages that are compensable. Ms. Kemple asserts that the Organizational Plaintiffs have claims for damages based on the diversion of resources and frustration of missions, (Dkt. No. 89-2, at 10), but that is a legal issue to be decided by the Court, not an issue for expert testimony, and the parties did not cite to any caselaw. The parties' dispute regarding Ms. Brooks' testimony concerning industry standards and reasonable accommodations is best considered after the Court has resolved the parties' legal arguments regarding reasonable accommodation under the FHA.

The Court therefore denies the motion to strike at this time, without prejudice to renewal. To the extent Defendants seek to renew this motion following the Court's ruling on the pending motions for summary judgment, the parties should meet and confer before Defendants file their

motion, in order to narrow the issues. Since expert reports are generally not admissible at trial, the parties should focus on the expert opinions Plaintiffs are seeking to admit at trial to which Defendants object.

### B.     Motions to Seal

#### 1.     Legal Standard

"The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *United States v. Erie County*, 763 F.3d 235, 238–39 (2d Cir. 2014). "Indeed, the common law right of public access to judicial documents is said to predate even the Constitution itself." *Id*. at 239. The First Amendment to the U.S. Constitution "also protects the public's right to have access to judicial documents." *Id*. A party seeking to seal documents submitted to a court bears the burden of showing that sealing is proper. *See DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

The Second Circuit has articulated a three-step process for determining whether documents should be sealed in light of the common law right of access. "Before any such common law right can attach . . . a court must first conclude that the documents at issue are indeed 'judicial documents.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). To constitute a judicial document, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo* (*Amodeo I*), 44 F.3d 141, 145 (2d Cir. 1995).

Second, after determining that the documents are judicial documents and that the "common law presumption of access attaches," the court must "determine the weight of that presumption." *Lugosch*, 435 F.3d at 119. According to the Second Circuit,

> the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those

> monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.

*United States v. Amodeo* (*Amodeo II*), 71 F.3d 1044, 1049 (2d Cir. 1995). When a document plays a role in a court's adjudication of litigants' substantive rights—a function that is "at the heart of Article III"—the presumption is strong, but "[a]s one moves along the continuum, the weight of the presumption declines." *Id.* When "documents are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal." *Id.* at 1050.

Third, the court must balance any "competing considerations" against the weight of the presumption of access. *Lugosch*, 435 F.3d at 120. "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Id.* (quoting *Amodeo II*, 71 F.3d at 1050); *accord Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016). When weighing privacy interests, courts should consider "the degree to which the subject matter is traditionally considered private rather than public." *Amodeo II*, 71 F.3d at 1051. Courts should also assess the "nature and degree of injury," paying heed to "the sensitivity of the information and the subject" and "how the person seeking access intends to use the information." *Id.* at 1051 (explaining that "[c]ommercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts").

The First Amendment right of access stems from the qualified right of the public and the press "to attend judicial proceedings and to access certain judicial documents." *Lugosch*, 435 F.3d at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). Once a court concludes that there is a qualified First Amendment right of access to the judicial

documents at issue, it may only seal the documents "if specific, on the record findings are made demonstrating the closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id*. (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). "Broad and general findings by the trial court . . . are not sufficient to justify closure." *Id*. (quoting *In re N.Y. Times Co.*, 828 F.2d at 116). Examples of "higher values" may include law enforcement interests, the privacy of innocent third parties, *Amodeo II*, 71 F.3d at 1050, the attorney-client privilege, *Lugosch*, 435 F.3d at 125, and sensitive commercial information, *Cunningham v. Cornell Univ.*, No. 16-cv-6525, 2019 WL 10892081, at *2 (S.D.N.Y. Sept. 27, 2019).

### 2. Analysis

Plaintiffs seek to file under seal Exhibit 56 to Plaintiffs' Motion for Partial Summary Judgment, "a document containing rental rates that was produced by Defendants in the course of discovery." (Dkt. No. 160, at 1). Plaintiffs also seek to file under seal (1) Exhibits 74 and 92 to Plaintiffs' Memorandum of Law in Opposition to Defendants' Cross Motion for Partial Summary Judgment and Reply in Support of Plaintiffs' Motion for Partial Summary Judgment; (2) portions of Plaintiffs' Memorandum of Law in Opposition to Defendants' Cross Motion for Partial Summary Judgment and Reply in Support of Plaintiffs' Motion for Partial Summary Judgment; (3) paragraphs 197 and 202–04 of Plaintiffs' Additional Statement of Undisputed Material Facts; and (4) paragraphs 118, 123, 128, 133, 138, 143, 148, 153, 158, 163, 168, and 173–82 of Plaintiffs' Response to Defendants' Statement of Material Facts. (Dkt. No. 182, at 1).

Defendants seek to file under seal (1) Exhibits 2–10 to the Declaration of C. Paul Wazzan; (2) Exhibits 11–18 and 20–59 to the Declaration of Geoffrey Maze; (3) Exhibits 60–71 to the Declaration of Andrew Cohen; (4) paragraphs 46–57 and 59–67 of the Declaration of Geoffrey Maze; and (5) paragraphs 118, 123, 128, 133, 138, 143, 148, 153, 158, 163, 168, and 173–182 of Defendants' Statement of Material Facts. (Dkt. No. 174, at 1).

7

The documents at issue were submitted to the Court "in connection with [the parties'] motion[s] for summary judgment." *Lugosch*, 435 F.3d at 123. "[D]ocuments submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." *Id.* at 121. The Second Circuit has instructed that the weight of the presumption of public access given to summary judgment filings "is of the highest: 'documents used by parties moving for, or opposing, summary judgment should not remain under seal *absent the most compelling reasons.*'" *Id.* at 123 (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)).[2]

Having concluded that both the common law and First Amendment provide a right of access to the documents, the Court must consider whether countervailing factors outweigh the presumption of access and whether continued sealing is justified under "the more stringent First Amendment framework." *Id.* at 124. "Broad and general findings and conclusory assertions are insufficient to justify deprivation of public access to the record; specific, on-the-record findings are required." *Bernstein*, 814 F.3d at 144–45 (internal quotation marks and alteration omitted).

In support of their first motion to seal, Plaintiffs rely on an email from attorney Elise L. Cassar, who represents Defendants in this case. (Dkt. No. 160-1, at 2). Cassar explains that Plaintiffs' Exhibit 56 should be designated as confidential under the Stipulated Confidentiality Agreement and Protective Order (the "Protective Order") because it "contains sensitive proprietary information regarding the market analysis for maximizing the setting of rental rates,"

---

[2] Defendants cite to the fact that Magistrate Judge Miroslav Lovric previously sealed eight of the documents they seek to file under seal here. (*See* Dkt. No. 112 (sealing eight property management agreements)). But those documents were submitted to Magistrate Judge Lovric in connection with a motion for discovery. The reasons for sealing documents submitted in connection with a motion for discovery "usually need not be as compelling as those required to seal summary judgment filings." *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 635 F Supp. 3d 247, 253 (S.D.N.Y. 2022) (quoting *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019)). Unlike documents submitted in connection with a motion for summary judgment, which are accorded "the strongest presumption of access," the presumption of access for documents submitted in connection with a discovery motion "is entitled to only 'modest' weight." *Id.* (citation omitted).

including "the market rental rates of properties which Defendants contend are not subject of the lawsuit." (*Id.*). As to their second motion to seal, Plaintiffs simply state that "Defendants contend that these documents are confidential for the reasons stated in Defendants' Motion to Seal Exhibits to Defendants' Cross-Motion for Partial Summary Judgment." (Dkt. No. 182, at 1 (citing Dkt. No. 174)). With respect to both of their motions to seal, "Plaintiffs take no position on the confidentiality of the documents, [but] do not oppose Defendants' confidential designations for the purposes of this motion." (Dkt. No. 160, at 1; Dkt. No. 182, at 1).

Defendants, in support of their motion to seal, argue that the documents at issue "contain information that Defendants have designated as confidential pursuant to the [Protective Order]." (Dkt. No. 174, at 2 (citing Dkt. No. 78)). According to Defendants, the documents include property management agreements, profit and loss statements, and rent roll reports, which "are private documents" containing "sensitive and proprietary" information that is "not generally available to the public." (*Id.* at 4, 6–7, 9). Defendants have requested wholesale sealing of numerous documents including, inter alia, the 57-page expert report of C. Paul Wazzan filed by both parties, (Dkt. Nos. 173-5, 181-28), and approximately twenty-eight property management agreements, (Dkt. Nos. 173-15–173-22, 173-24–173-43).

All three motions to seal fail to satisfy the sealing standard articulated in *Lugosch*. The parties have not filed affidavits from individuals with personal knowledge demonstrating the factual basis for sealing each document or that their requests are narrowly tailored. Instead, the parties rely on arguments and conclusory statements put forward by Defendants' attorneys, who do not purport to have personal knowledge of the facts that would warrant sealing. *See*, *e.g.*, *Prescient Acquisition Grp., Inc. v. MJ Pub. Tr.*, 487 F. Supp. 2d 374, 375 (S.D.N.Y. 2007) (noting that in asking the parties to address motion to seal, the court had "directed any party

seeking to maintain a document under seal to submit 'an affidavit by a person with personal knowledge of the facts, i.e. not merely counsel of record'"); *Utica Mut. Ins. Co. v. Munich Reins. Am., Inc.*, No. 12-cv-196, 2017 WL 9400673, at *1, 2017 U.S. Dist. LEXIS 222869, at *3 (N.D.N.Y. Jan. 6, 2017) (denying motions to seal, observing that the "parties have not filed affidavits from individuals with personal knowledge identifying with particularity the precise documents they seek to keep under seal and have made no attempt to demonstrate the factual basis for sealing each document or that their requests are narrowly tailored").

While Defendants' attorneys attempt to outline the sensitive nature of the documents at issue, their repetitive and largely conclusory assertions that the documents contain "sensitive and proprietary" information that is "not generally available to the public" are devoid of factual details that would support these assertions. For example, attorney Cassar states that Plaintiffs' Exhibit 56 "contains sensitive proprietary information regarding the market analysis for maximizing the setting of rental rents." (Dkt. No. 160-1, at 2). This statement does not explain how the relevant information is sensitive or proprietary or how Exhibit 56 is maintained as confidential. It therefore fails to articulate a factual basis for wholesale sealing. *See, e.g.*, *Bayer Schera Pharma AG v. Sandoz, Inc.*, Nos. 08-cv-03710, 08-cv-08112, 2009 WL 10699031 at *2, 2009 U.S. Dist. LEXIS 141775, at *11–12 (S.D.N.Y. Nov. 12, 2009) (denying motion to seal because, inter alia, "declaration from [plaintiff's] attorney cannot and does not establish that the documents . . . were maintained as confidential").

In addition, statements by Defendants' attorneys that Plaintiffs' Exhibit 56 should be marked confidential under the Protective Order, (Dkt. No. 160-1, at 2), and that other documents at issue contain information designated as confidential under the Protective Order, (Dkt. No. 174, at 2), are insufficient to overcome the presumption of access as the "mere existence of a

confidentiality order says nothing about whether complete reliance on the order to avoid disclosure [is] reasonable." *Lugosch*, 435 F.3d at 126; *see also Doe v. U.S. Immigr. & Customs Enf't*, No. 19-cv-8892, 2021 WL 3862708, at *3, 2021 U.S. Dist. LEXIS 167094, at *7 (S.D.N.Y. Aug. 30, 2021) ("However, that a document was produced in discovery pursuant to a protective order has no bearing on the presumption of access that attaches when it becomes a judicial document." (quoting *Collado v. City of New York*, 193 F. Supp. 3d 286, 289 (S.D.N.Y. 2016))).

The parties have failed to explain why wholesale sealing of numerous documents, including the Wazzan expert report and the property management agreements, would be justified. Nor have the parties offered any explanation as to why their proposed redactions of other documents are narrowly tailored. *See Susquehanna Int'l Grp. Ltd. v. Hibernia Express (Ireland) Ltd.*, No. 21-cv-207, 2021 WL 3540221, at *4, 2021 U.S. Dist. LEXIS 151075, at *8 (S.D.N.Y. Aug. 11, 2021) (denying motion to seal noting that, among other deficiencies in their motion, "the parties have made no effort to present a 'narrowly tailored' sealing request, as *Lugosch* requires" (citing *Lugosch*, 435 F.3d at 120)). Accordingly, the parties have failed to satisfy their burden of showing that the documents at issue should be sealed. *DiRussa*, 121 F.3d at 826 ("The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action.").

Based on the foregoing, the Court denies the parties' motions to seal without prejudice to renewal. Since Plaintiffs' motions to seal are based on Defendants' designation of items as confidential, their sealing requests must be supported by Defendants. To the extent Defendants wish to renew the motions to seal with respect to these documents, they should propose narrowly tailored redactions that satisfy the sealing standard articulated in *Lugosch* and explain the basis

11

for those redactions. *See, e.g., Rensselaer Polytechnic Inst. v. Amazon.com, Inc.*, No. 18-cv-549, 2019 WL 2918026, at *3, 2019 U.S. Dist. LEXIS 116674, at *9 (N.D.N.Y. June 18, 2019) (denying requests to wholesale seal exhibits where "part of [the exhibits] might satisfy the sealing standard" but "the request for sealing is not narrowly tailored," and holding that "the parties must identify the specific parts they wish to redact and the basis for those redactions"). Any renewed motion to seal must be filed within three weeks of the date of this decision.

### III.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to strike Plaintiffs' expert reports, (Dkt. No. 89), is **DENIED** without prejudice to renewal; and it is further

**ORDERED** that the parties' motions to seal, (Dkt. Nos. 160, 174, 182), are **DENIED** without prejudice to renewal; and it is further

**ORDERED** that any renewed motion to seal must be filed within three weeks of the date of this decision, with supporting affidavit(s) from individuals with personal knowledge setting forth the reasons why sealing satisfies the sealing standard in *Lugosch*; and that to the extent Defendants' renewed motion seeks to file a redacted version of an exhibit, the proposed redacted version must be provided to the Court in accordance with Local Rule 5.3(a); and it is further

**ORDERED** that if there is not a timely renewed motion to seal the Clerk of the Court shall publicly file the items for which sealing has been denied.

**IT IS SO ORDERED.**

Dated: May 8, 2024
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge